JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Petitioner,<br><br>vs.<br><br>EXXON MOBIL OIL CORP.<br><br>    Respondent. | Case No.: MC 17-00066 CBM<br><br>**ORDER RE: PETITION TO ENFORCE ADMINISTRATIVE SUBPOENAS** |

The matter before the Court is the United States's Petition to Enforce Administrative Subpoenas Issued by the U.S. Chemical Safety and Hazard Investigation Board. (Dkt. No. 1.) On October 17, 2017, the Court held a hearing on the petition.

After considering the evidence and argument of both parties, the Court **GRANTS IN PART** and **DENIES IN PART** the petition, as more specifically set forth below.

### I. BACKGROUND

The basic facts are not in dispute. On February 18, 2015, at an Exxon Mobil Oil Corp. ("Exxon") oil refinery in Torrance, California, an equipment malfunction within the Fluid Catalytic Cracking ("FCC") unit caused flammable hydrocarbons to unexpectedly flow into an electrostatic precipitator unit where

1

they ignited. The resulting explosion injured multiple workers, caused substantial property damage, and sent ash filled with metals, fiberglass, and glass wool into nearby neighborhoods. The explosion also catapulted a piece of debris from the electrostatic precipitator weighing about 40 tons into the air. It landed over 100 feet away in the adjacent alkylation unit, within five feet of a tank filled with thousands of gallons of modified hydrofluoric acid. The U.S. Chemical Safety and Hazard Investigation Board ("CSB" or the "Board") instituted an investigation into the incident. *See* 42 U.S.C. § 7412(r)(6)(C)(i).

Several weeks later, on March 11, 2015, while Exxon workers were removing debris from the February 2015 explosion, their activities caused sparks, igniting a fire that burned for several hours. On September 6, 2015, about five pounds of modified hydrofluoric acid leaked from a pipe clamp used to repair an aging pipe.

In the course of its investigation into the February 2015 incident, CSB issued seven administrative subpoenas to Exxon, including numerous requests for documents and information relating to various aspects of the incident and the Torrance refinery. *See* 42 U.S.C. § 7412(r)(6)(L) (granting CSB the authority to issue administrative subpoenas in the course of its investigations). The subpoenas also requested information relating to the March and September incidents as well. Exxon complied with many of the requests, producing 65 witnesses and 137,000 pages of documents in all. However, Exxon has refused to comply fully with six of these seven subpoenas,[1] on the basis that the subpoenas seek documents beyond the scope of CSB's subpoena authority. On May 5, 2017, the United States filed this action, seeking judicial enforcement of the subpoenas.

## II. LEGAL STANDARD

"The scope of the judicial inquiry in an ... agency enforcement proceeding is quite narrow. The critical questions are: (1) whether Congress has granted the

---

[1] At issue in this litigation are 55 document requests and one interrogatory.

authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *E.E.O.C. v. Federal Exp. Corp.*, 558 F.3d 842, 848 (9th Cir. 2009) (quoting *E.E.O.C. v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001)). The Ninth Circuit has emphasized the "'strictly limited' role of the district court when an agency subpoena is attacked for lack of jurisdiction." *Id.* (internal citations omitted). "As long as the evidence is relevant, material, and there is some 'plausible' ground for jurisdiction, or, to phrase it another way, unless jurisdiction is 'plainly lacking,' the court should enforce the subpoena." *Id.*

In the context of administrative subpoenas, "[r]elevancy is determined in terms of the investigation rather than in terms of evidentiary relevance." *Id.* "Moreover, the relevancy requirement is 'not especially constraining.' The term 'relevant' is 'generously construed' to 'afford the [agency] access to virtually any material that might cast light on [the matter under investigation]." *Id.* (internal citations omitted).

## III. DISCUSSION

### A. CSB's Objection to Exxon's Submission of Statements Made during Settlement Negotiations

CSB objects to Exxon's introduction of statements it made during settlement negotiations, on the basis that such evidence is inadmissible. *See* Fed. R. Evid. 408(a) (prohibiting the use of offers of compromise or statements about the claim during settlement negotiations to prove or disprove the validity of the claim). The Court agrees and **SUSTAINS** the objection.[2]

---

[2] Even if the Court were to consider those statements, the Court finds them unhelpful in resolving the fundamental issue in this case: the relevance of the documents sought.

3

**B. Requirements for Enforcement of Administrative Subpoenas**

**1. Authority to Investigate**

CSB has authority to "investigate ... determine and report to the public in writing the facts, conditions, and circumstances and the cause or probable cause of any accidental release resulting in a fatality, serious injury or substantial property damages[.]" 42 U.S.C. § 7412(r)(6)(C)(i) ("Subparagraph (C)"). CSB is authorized to issue subpoenas for the purpose of carrying out such investigations. 42 U.S.C. § 7412(r)(6)(L)-(M). It is undisputed that the February 2015 incident at the Torrance refinery involved an "accidental release" within CSB's Subparagraph (C) investigative authority, thus authorizing CSB to issues subpoenas for information relevant to its investigation of that accidental release.

CSB advanced a new argument at the hearing that it has an even broader investigative power to subpoenas documents that are not otherwise relevant to the February 2015 accidental release. Relying on Subparagraph (C)(ii) of the agency's enabling statute, CSB pointed to its duty to "issue periodic reports ... recommending measures to reduce the likelihood or the consequences of accidental releases and proposing corrective steps to make chemical production, processing, handling and storage as safe and free from risk of injury as is possible." 42 U.S.C. § 7412(r)(6)(C)(ii). According to CSB, this provision grants the agency additional investigative authority to subpoena documents unrelated to any accidental release.

CSB did not identify this provision as a basis for the subpoenas when they were issued, not did it advance this argument in any of its filings in this Court.[3] Rather, CSB's papers focused entirely on arguing that the information sought is relevant to CSB's investigation into the February 2015 accidental release under Subparagraph (C)(i). On its face, Subparagraph (C)(ii) makes no mention of

---

[3] The only mention of § 7412(r)(6)(C)(ii) in CSB's petition is a passing reference in a background discussion of CSB and its responsibilities.

4

investigations, and CSB has not responded to Exxon's argument that CSB's duties under Subparagraph (C)(ii) are ancillary to its investigative authority under Subparagraph (C)(i), rather than an expansion of that investigative authority. The Court remains unconvinced and does not consider Subparagraph (C)(ii) as an independent basis for the subpoenas at issue.

Accordingly, the Court concludes that CSB has been granted authority to investigate the February 2015 accidental release, but that its subpoena authority is limited to seeking information relevant to that investigation.

### 2. Procedural Requirements

Exxon does not dispute that CSB complied with all procedural requirements in issuing the disputed subpoenas.

### 3. Relevance of the Information Sought

Before turning to the specific requests contained in CSB's subpoenas, the Court will first address the parties' dispute regarding the scope of information relevant to CSB's investigation under Subparagraph (C). Exxon argues that CSB's authority to investigate "the facts, conditions, and circumstances and the cause or probable cause" of the February 2015 incident is limited to determining the cause or probable cause of the accidental release, thus rendering all other information irrelevant. The Court disagrees. If the phrase "facts, conditions, and circumstances and the cause or probable cause" were interpreted to mean only "cause or probable cause," then the words "facts, conditions, and circumstances" would be superfluous.

Exxon cites various statements from the statute's legislative history in support of its position. However, those statements only speak to the general purpose of investigations under Subparagraph (C), without purporting to speak to the scope of CSB's investigative power, and those statements appear amid other statements emphasizing that CSB's information-gathering authority should be broadly construed. *See, e.g.*, S. Rep. No. 101-228 at 3617 ("These authorities to

conduct hearings, gather information, and conduct inspections are to be construed in the broadest way so as to facilitate the activities of the Board and the objectives of the Act."). Accordingly, the Court concludes that CSB has the authority to investigate the "facts, conditions, and circumstances" of the February 2015 accidental release within the ordinary meaning of that phrase, which is not limited to the cause or probable cause of the accidental release.

C.  **Decisions on Particular Requests**

The Court concludes that CSB's subpoenas are enforceable to the extent they seek information relevant to the "facts, conditions, and circumstances and the cause or probable cause" of the February 2015 accidental release at the Exxon's Torrance refinery. The Court has considered each request for information identified in CSB's petition, cognizant that "the relevancy requirement is 'not especially constraining.'" *Federal Exp. Corp.*, 558 F.3d at 848. While many of the requests seek evidence that is relevant under this generous standard, some of the requests seek information with such attenuated connections to the February 2015 release that they cannot reasonably be considered relevant even under the most liberal relevance standard.

The Court finds request 1SUBDOC01 **ENFORCEABLE IN PART**. Specifically, the Court finds the request **ENFORCEABLE** insofar as it seeks "risk assessments performed for the FCC unit … and the CO Boiler," because such documents are reasonably likely to contain information relevant to the "the facts, conditions, and circumstances and the cause or probable cause" of the February 2015 accidental release. The Court finds the request **UNENFORCEABLE** insofar as it seeks "risk assessments performed for … the alkylation unit," because such documents are insufficiently related to the facts, conditions, and circumstances of the February 2015 accidental release to reasonably be considered relevant.

The Court finds the following requests **ENFORCEABLE** as reasonably likely to elicit information relevant to the facts, conditions, and circumstances and the cause or probable cause of the February 2015 accidental release:

- 2SUBDOC04
- 3SUBDOC09
- 3SUBDOC10
- 3SUBDOC13
- 3SUBDOC14
- 3SUBDOC15
- 3SUBDOC16
- 3SUBDOC32
- 3SUBDOC34
- 3SUBDOC35
- 3SUBDOC37
- 3SUBDOC42
- 3SUBDOC51
- 3SUBDOC58
- 3SUBDOC60
- 3SUBDOC63
- 3SUBDOC67
- 4SUBDOC10
- 5SUBDOC5
- 5SUBDOC17
- 5SUBDOC24
- 5SUBDOC28
- 5SUBDOC31
- 5SUBDOC38
- 5SUBDOC44
- 5SUBDOC45
- 5SUBDOC46
- 5SUBDOC47
- 5SUBDOC54

The Court finds the following requests **UNENFORCEABLE** because the requested information is not sufficiently related to the facts, conditions, and circumstances and the cause or probable cause of the February 2015 accidental release to reasonably be considered relevant:

- 2SUBDOC02
- 2SUBDOC03[4]
- 1SUBINT01
- 3SUBDOC11
- 3SUBDOC17
- 3SUBDOC18
- 3SUBDOC19
- 3SUBDOC20
- 3SUBDOC29
- 3SUBDOC43
- 3SUBDOC52
- 4SUBDOC01
- 4SUBDOC02
- 4SUBDOC03
- 4SUBDOC04
- 4SUBDOC05
- 4SUBDOC06
- 4SUBDOC07
- 4SUBDOC08
- 4SUBDOC09
- 4SUBDOC11
- 4SUBDOC12
- 4SUBDOC13
- 4SUBDOC14

---

[4] Requests 2SUBDOC02 and 2SUBDOC03 seek documents relating to the March 2015 fire. Although the March 2015 fire can ultimately be traced back to the same explosion that caused the February 2015 accidental release, the fire was not a result of the accidental release, nor did it involve an accidental release.

7

| | • 5SUBDOC11 | • 5SUBDOC15 |

**D.  Exxon's Request for a Protective Order**

In the event CSB's subpoenas are enforced, Exxon requests that the Court issue a protective order to maintain confidentiality of the information disclosed under the subpoenas. While the Court agrees with Exxon that issuance of a protective order is within the Court's inherent power, Exxon has not established that a protective order is necessary in this case.

Exxon first asks that the Board be prohibited from using any of Exxon's produced documents as part of a general hazard study regarding hydrogen fluoride or modified hydrogen fluoride. However, most of the document requests related to hydrogen fluoride and modified hydrogen fluoride have been deemed irrelevant by this Court, and thus will not need to be produced. With respect to documents that are produced under other requests, Exxon has not shown that the confidentiality provisions of 42 U.S.C. § 7412(r)(6)(Q) are insufficient to protect its business interests.

Exxon next asks that the Board be required to follow the notice provisions outlined in 40 C.F.R. §§ 1601.26(c) and (e)[5] before disclosing its documents in response to a FOIA request. But, as CSB points out, those protections already apply to any Confidential Commercial Information ("CCI") that Exxon produces. *See* 40 C.F.R. § 1601.15(d). The primary effect of the protective order sought by Exxon would simply be to extend those protections to all produced documents, irrespective of whether they contain CCI. Exxon has not demonstrated that this is warranted.

Finally, Exxon requests that its produced documents be protected under FOIA Exemption 4 indefinitely. However, Exxon has not shown that Court intervention in the form of a protective order is warranted. There are already in place procedures by which Exxon can administratively seek to extend the time that

---

[5] Now 40 C.F.R. §§ 1601.15(d) and (f).

its documents will be protected. *See* 40 C.F.R. § 1601.15(c) (providing that "designations [of information protected by Exemption 4] expire ten (10) years after the date of the submission *unless the submitter requests and provides justification for a longer designation period*") (emphasis added).

The Court therefore **DENIES** Exxon's request for a protective order.

**IT IS SO ORDERED.**

DATED: November 3, 2017

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE